860 F.2d 1080
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John H. REID, Defendant-Appellant.
 No. 88-5163.
 United States Court of Appeals, Sixth Circuit.
 Oct. 14, 1988.
 
 Before NATHANIEL R. JONES, and RALPH B. GUY, Jr., Circuit Judges, and DOUGLAS W. HILLMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, John H. Reid, appeals from a conditional plea of guilty entered pursuant to the provisions of Fed.R.Crim.P. 11(a)(2). Reid pled guilty to a violation of 18 U.S.C. Sec. 1708, possession of stolen mail matter. Prior to Reid entering his guilty plea, the district court held a suppression hearing. The principal focus of the hearing was on whether Reid had given voluntary consent to search a Greyhound bus locker where the stolen mail was found. The court denied the motion to suppress and also initially rejected Reid's guilty plea and set the case for trial. In denying the motion to suppress, the district judge concluded that Reid had either given consent to the search or had indicated to the officers that the property in the Greyhound locker was not his, in which case he would not have standing to challenge the search. At a subsequent date, the court accepted the conditional guilty plea and this appeal followed.
 
 I.
 
 2
 On February 11, 1987, at approximately 6:30 p.m., Metro Police responded to an attempted check forgery complaint at Hill's Department Store. Upon arriving at the scene, the police found the suspect, defendant Reid, being detained by store personnel. Reid was first questioned by Officer Scott Hull. There is no dispute that Hull first read Reid his Miranda rights before asking any questions. Hull also searched Reid and removed the contents of Reid's pockets. Hull received little information from Reid.
 
 
 3
 Shortly after Hull had searched Reid, Detective John Patton arrived and began questioning Reid. It is disputed as to whether Patton read Reid his Miranda rights a second time.[1] In any event, Patton had no more success than Hull in securing information from Reid. Among the possessions in Reid's pockets were two keys. Reid maintains that Patton, recognizing them as Greyhound locker keys,[2] confronted him with this fact. Reid replied that the keys were not his and he did not know where they came from.[3] Patton, on the other hand, testified that he did not recognize the keys and that Patton left to return to the station to book Reid. It is undisputed that Patton proceeded from Hill's Department Store first and that Officer Hull left a few minutes later with Reid.
 
 
 4
 Enroute to the station, Hull radioed Patton and told him to meet him at the Greyhound bus station. Upon arrival at the bus station, Hull told Patton that the keys Reid had in his pocket were to lockers at the station. Patton questioned Reid who informed him there were other checks in the locker. Patton then said it would save everyone time if they could go into the lockers now rather than taking time to get a search warrant. Patton claims that Reid's response was that he had already given Officer Hull permission to do so. Since the officers were not in possession of written consent to search forms, they presented none to Reid. Reid subsequently refused to sign a written consent to search form at the police station.
 
 
 5
 When the officers opened the locker, they found that it contained Reid's personal belongings and luggage as well as mail matter. Upon finding the mail, Patton notified the Postal Inspectors and Postal Inspector Alley met the officers and the defendant at the police station. Reid was subsequently indicted for the federal offense of possession of stolen mail.[4]
 
 II.
 
 6
 On appeal, Reid first argues that he had a legitimate expectation of privacy in the locker searched; that the locker was searched without a warrant; and that absent exigent circumstances or consent, he has standing to challenge the search. As an abstract proposition of law, we have no quarrel with the contention but, within the context of the suppression hearing held in this case, the contention simply will not stand.
 
 
 7
 Detective Patton testified that Reid gave his consent to the search and stood with the officers without protest while they opened the lockers. Patton further testified that Reid admitted the clothing and luggage were his but maintained the mail matter did not belong to him.
 
 
 8
 When Reid testified at the suppression hearing, he did not deny the events that took place at the Greyhound depot but, rather, offered the version that Patton had recognized the keys while still at Hill's Department Store. Apparently, although he did not so testify, what Reid is suggesting is that after Patton recognized the keys, the officers simply marched him down to the Greyhound station and opened the locker without probable cause. There are several problems with this contention. First, even if truthful, it was Reid himself who testified the keys were not his and he knew nothing about them. Thus, he abandoned any claim to the keys or what they might unlock. Second, the trial judge determines credibility and, if he chose to credit Patton's version rather than Reid's, we would not second-guess him under these circumstances. What adds credibility to the government's version is the fact that Patton left Hill's Department Store ahead of the others and was radioed by Officer Hull to change his course and meet them at the bus station. This is inconsistent with a version that would have the whole entourage making a bee-line from Hill's to the Greyhound depot. In short, we conclude that Reid did have standing to challenge the search; he in fact did so and the court found against him primarily on the basis of a credibility determination. We cannot conclude that the trial judge was clearly erroneous in his finding.
 
 
 9
 Reid also raises issues involving the government's claim that he disavowed any property interest in the keys. Since it was Reid himself who testified he told the officers the keys were not his, he is forced into making two fall-back arguments: (1) the statement of abandonment was not voluntary, and (2) he was held for four hours before being taken before a judge.
 
 
 10
 As to the statement not being voluntary, this is predicated on the fact that there is a dispute as to whether Patton, as well as Hull, gave Reid his Miranda rights. As we stated in footnote 1, supra, we conclude that Reid was adequately apprised of his Miranda rights when Hull read them to him. The questioning by Patton was merely an uninterrupted continuation of the same interrogation. It is not necessary for every officer participating in a joint interrogation to give a suspect Miranda warnings.
 
 
 11
 It is true that Reid was in custody for a period of four hours prior to being taken before a judicial officer, but this fact begs rather than answers the question. There is no suggestion that there was any purposeful delay in furtherance of an ulterior or improper motive. Furthermore, if the officers' account of the trip to the Greyhound bus station is credited, the length of time that elapsed was not inordinate.
 
 
 12
 It appears that what actually occurred here is that Reid cooperated with the police to the point where he thought he was only facing a state bad check charge. When the local police called in the Postal Inspectors, Reid's attitude changed dramatically and quickly. We agree with the trial judge that his after-the-fact version of what occurred during the arrest process is simply not creditable.[5]
 
 
 13
 AFFIRMED.
 
 
 14
 NATHANIAL R. JONES, Circuit Judge, concurring.
 
 
 15
 Because I find the majority opinion unnecessarily broadens and recharacterizes the defendant's allegations regarding his consent to the search of the locker, I concur in the result only.
 
 
 
 *
 Honorable Douglas W. Hillman, Chief Judge, United States District Court, Western District of Michigan, sitting by designation
 
 
 [1]
 We consider it of no significance whether Patton read Reid his Miranda rights again or not since Reid had just received them a moment before from another officer
 
 
 [2]
 Patton moonlighted as a security guard for Greyhound
 
 
 [3]
 At the suppression hearing, Reid testified on this issue as follows:
 Q. What was said, if anything--did he ask you about searching the lockers?
 A. I told him that I didn't know where the keys come from, they weren't mine, that--he told me at this time he could get a search warrant. I told him that he could obtain a search warrant if he wanted--
 (App. at 69).
 
 
 [4]
 While it is unclear from the record, it appears there also may have been a state prosecution growing out of this episode. Additionally, the record does not indicate the precise nature of defendant's involvement in the offense charged and to which he pled guilty
 
 
 [5]
 We find no merit to defendant's remaining contention that his due process rights were violated by the manner in which the suppression hearing was held. It is true that the trial judge brought the initial hearing to a rather abrupt ending, but if any error was involved in the termination, it was cured when the judge later gave defendant an opportunity to continue the hearing